UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00128-GNS

DANIEL THOMPSON                                                      PLAINTIFF

v.

BRANDON POSTON, et al.                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motions for Summary Judgment (DNs 46, 47). The motions are ripe for adjudication. For the reasons below, the motions are **GRANTED**.

**I.    SUMMARY OF THE FACTS**

Plaintiff Daniel Thompson ("Thompson") was a pretrial detainee at Hart County Jail and alleges that officials were aware of his asthma but delayed or refused to provide his inhaler and breathing treatments. (Compl. 1, 5-23, DN 1). Thompson initiated this civil rights action against Defendants Brandon Polston,[1] Shelby Dixon, Austin Reynolds, Danny Mabe,[2] Terry Riley, Donald Bryant, and Daniel Farrell (the "HCJ Defendants"), and Fernando Pereira and Susan Lindsey (the "SHP Defendants")[3] (collectively "Defendants") in their individual and official capacities. (Compl. 1-4). This Court construed Thompson's assertions as claims of deliberate indifference to serious medical needs in violation of the Fourteenth Amendment. (Service & Scheduling Order

---

[1] The Complaint erroneously refers to Polston as "Poston." (Compl. 2; Answer 1, DN 24).
[2] The Complaint erroneously refers to Mabe as "Maybe." (Compl. 3; Answer 1).
[3] Thompson alleges that SHP Defendants are employed by Hart County Jail. (Compl. 2). Jailer Israel Bergenson ("Bergenson") clarifies that the jail contracts with Southern Health Partners to serve as the facility's sole on-site medical providers. (Bergenson Aff. ¶ 5, DN 47-5).

1, DN 11). Defendants move for summary judgment. (Defs.' Mot. Summ. J., DN 46; Defs.' Mot. Summ. J., DN 47).

## II. JURISDICTION

The Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331.

## III. STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thereafter, the burden shifts to the nonmoving party to present specific facts indicating a genuine issue of a disputed material fact essential to the case, beyond "some metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The nonmoving party must present facts demonstrating a material factual dispute that must be presented to "a jury or judge to resolve the parties' differing versions of the truth at trial[;]" the evidence, however, is "not required to be resolved conclusively in favor of the party asserting its existence . . . ." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). If the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, the motion should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## IV. DISCUSSION

"Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). The "due process rights to medical care [afforded to pretrial detainees under the Fourteenth Amendment] 'are at least as great as the Eighth Amendment

protections available to a convicted prisoner.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020)). This right to care is violated when a defendant acts with deliberate indifference to a pretrial detainee's serious medical needs. *Hyman*, 27 F.4th at 1237 (quoting *Greene*, 22 F.4th at 605). Accordingly, to succeed on such a claim, a detainee "must show (1) that [he] had a sufficiently serious medical need and (2) that each defendant 'acted deliberately (not accidentally), [and] also recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."'" *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023) (second alteration in original) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021)).

"A serious medical need is one 'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Greene*, 22 F.4th at 607 (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). Like in *Harrison*, "the parties do not dispute the fact that asthma satisfies the 'objective' requirement of [the] deliberate indifference claim." *Harrison*, 539 F.3d at 518; (Defs.' Mem. Supp. Mot. Summ. J. 9, DN 46-1; Defs.' Mem. Supp. Mot. Summ. J. 10-11, DN 47-1); *cf. Carlson v. Green*, 446 U.S. 14, 18-23 (1980) (holding that an inmate's estate may bring an Eighth Amendment *Bivens* action against federal officers following the inmate's asthma-related death).

For the second prong, Thompson must prove each Defendant "either (a) acted intentionally to ignore [his] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed," where a reasonable officer in the same circumstances would know, or should have known, the excessive risk to Thompson's health or safety. *Brawner*, 14 F.4th at 597; *accord Helphenstine*, 60 F.4th at 317. Mere negligence is insufficient to show deliberate indifference; "[a] pretrial detainee must prove 'more than negligence but less than

subjective intent—something akin to reckless disregard.'" *Brawner*, 14 F.4th at 596 (citations omitted).

Bergenson explains that detainees "are not permitted to keep inhalers in their cell for safety and security purposes." (Bergenson Aff. ¶ 7). Therefore, Thompson's inhaler was kept at the booking desk and brought to him when requested. (Bergenson Aff. ¶ 7). As for the breathing treatments, HCJ Defendants "were responsible [only] for escorting [Thompson] to and from the booking area," where the machine was located, as Thompson could provide the treatments without assistance. (Bergenson Aff. ¶ 8). HCJ Defendants routinely "found [Thompson] using the opportunity to talk to other individuals and not actually using his machine." (Bergenson Aff. ¶ 8).

Thompson alleges that Defendants were slow to, or did not, provide his inhaler or breathing treatments on several enumerated occasions but has failed to substantiate his claim that these requests were made or that they went unanswered. (Compl. 9-23). Defendants, on the contrary, provide timesheets documenting hundreds of Thompson's breathing treatments, with Thompson receiving multiple treatments in one day on numerous occasions. (Defs.' Mot. Summ. J. Ex. 2, DN 46-4; Defs.' Mot. Summ. J. Ex. G, at 7-22, DN 47-8). Moreover, Thompson does not offer any evidence demonstrating that any purported failure to provide his inhaler or treatment was intentional. *See Helphenstine*, 60 F.4th at 317. Thompson seemingly acknowledges this shortcoming by noting that Defendants' evidence of medical care "do[es] not show [] the numerous times [] Thompson was denied his request for medical care," but Thompson still does not provide evidence to fill these supposed gaps. (Pl.'s Resp. Defs.' Mot. Summ. J. 6, DN 51).

Thompson maintains that his hospitalization in March 2021 is indicative of Defendants' deliberate indifference, but those events demonstrate an attentiveness to Thompson's condition, however, as opposed to indifference. (Compl. 7). Bergenson confirms that Thompson was

transferred to the hospital for asthma-related complaints, with hospital records verifying admission for acute asthma exacerbation with complaints of dyspnea, wheezing, and a history of asthma. (Bergenson Aff. ¶ 10; Defs.' Mot. Summ. J. Ex. 7, at 1, 4, DN 46-9 [hereinafter Hosp. R.]). Thompson exhibited "[m]oderate diffuse end expiratory wheezes with prolonged expiratory phase" but "admit[ted] to significant improvement in his breathing after receiving steroids and nebulized breathing treatments in the ER." (Hosp. R. 13, 25, 27). Thompson never claimed that jail officials deprived him of his inhaler or breathing treatments, but instead told medical providers he was "receiving increased doses of his [inhaler] and nebulized treatments every 6 hours for the past couple of months" which treatments were not continuing to be as effective. (Hosp. R. 27).

Thompson briefly claims that Defendants failed to restrict him from buying e-cigarettes at the commissary, but he does not address this contention any further nor does he cite any relevant caselaw. (Pl.'s Resp. Defs.' Mot. Summ. J. 2; *see* Defs.' Mot. Summ. J. Ex. 1, DN 46-3 (purchase records)). Given the lack of development in this argument, it is considered to be waived. *See Alexander v. Carter*, 733 F. App'x 256, 263 (6th Cir. 2018) ("A 'perfunctory' argument lacking 'some effort at develop[ment]' is deemed waived." (alteration in original) (citation omitted)).

Therefore, Defendants have demonstrated the lack of a genuine issue of material fact as to Thompson's care, and Thompson did not meet his contrary burden beyond "some metaphysical doubt." *Celotex Corp.*, 477 U.S. at 323; *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87. Accordingly, summary judgment is proper in favor of Defendants in their individual capacities.

Thompson also alleges his claims against Defendants in their official capacities, so those claims are treated as if brought against Hart County. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (explaining that "official-capacity suits" operate as if "against an entity of which an officer is an agent" and "is, in all respects other than name, to be treated as a suit against the entity."

5

(internal quotation marks omitted) (citations omitted)). This inquiry has two prongs: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [government entity] is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (citations omitted); *cf. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Without a constitutional violation, the claims fail. *See Puskas v. Del. Cnty.*, 56 F.4th 1088, 1099 (6th Cir. 2023) ("An underlying constitutional violation is the *sine qua non* of municipal liability . . . ." (citations omitted)); *Thomas v. City of Columbus*, 854 F.3d 361, 367 (6th Cir. 2017) ("No constitutional violation means no municipal liability." (citations omitted)).

As discussed above, Thompson cannot establish a constitutional violation for deliberate indifference to his serious medical needs, which is why summary judgment is proper for Defendants sued in their individual capacities. Therefore, without this requirement—the *sine qua non*—Thompson's claims fail as to Defendants in their official capacities and Hart County.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment (DNs 46, 47) are **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

April 10, 2023

cc: counsel of record
 Daniel Thompson, *pro se*